# IN THE SUPREME COURT OF TEXAS

No. 15-0106

TOWN OF LAKEWOOD VILLAGE, PETITIONER,

v.

HARRY BIZIOS, RESPONDENT

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS

**Argued March 8, 2016**

JUSTICE BOYD delivered the opinion of the Court.

JUSTICE JOHNSON did not participate in the decision.

The issue in this interlocutory appeal from a temporary-injunction order is whether a Type A general-law municipality has authority to enforce its building codes and building-permit requirements within its extraterritorial jurisdiction. We hold that that it does not and affirm the court of appeals' judgment reversing the temporary injunction.

## I.
## Background

The Town of Lakewood Village (the Town) is a Type A general-law municipality located in Denton County. Because the Town's population is approximately 620, its extraterritorial

jurisdiction (ETJ)[1] extends one half-mile beyond its boundaries. TEX. LOC. GOV'T CODE § 42.021(a)(1). The Town's ETJ encompasses part of the Sunrise Bay subdivision (the Subdivision). Other parts of the Subdivision are within the city limits and ETJ of the City of Little Elm, a nearby home-rule city that has a larger population than the Town. When developers planned the subdivision in the mid-1990s, Little Elm and Denton County approved the final plat, but the developers did not file a plat with the Town. The Town does not provide any services to the Subdivision. Little Elm provides water to the Subdivision, while both Little Elm and Denton County maintain the Subdivision's roads.

Harry Bizios purchased a lot in the Subdivision in 2013. Bizios's lot is located entirely within the Town's ETJ, outside Little Elm's ETJ and city limits. Before building a house on the lot, Bizios obtained all required approval and permits from Denton County, the Federal Emergency Management Agency, and the Subdivision's architectural review committee. The County regularly inspected the construction pursuant to county regulations.

Bizios did not, however, obtain building permits from the Town, even though the Town's ordinances adopt building codes and make them enforceable within its ETJ.[2] The Town filed this suit after Bizios ignored its orders to stop construction. After limited discovery, the trial court granted the Town's application for a temporary injunction and ordered Bizios to cease all construction pending a final resolution on the merits. Bizios took an interlocutory appeal from the temporary injunction. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(4) (permitting interlocutory

---

[1] An ETJ is an "unincorporated area that is contiguous to the corporate boundaries of the municipality" and is located within a specified distance of those boundaries, depending on the municipality's population. TEX. LOC. GOV'T CODE § 42.021. A municipality with fewer than 5,000 inhabitants has an ETJ extending one-half mile beyond its corporate boundaries. *Id.* § 42.021(a)(1).

[2] The Town's ordinance adopts the 2006 International Building Code, with some amendments and deletions.

2

appeal from order that "grants or refuses a temporary injunction"). The Fort Worth Court of Appeals reversed the temporary injunction, holding that the Town has no authority to enforce its building codes within its ETJ. 453 S.W.3d 598, 605 (Tex. App.—Fort Worth 2014). We granted the Town's petition for review.

## II.
## Jurisdiction

Bizios challenges our jurisdiction to hear this interlocutory appeal, so we address that issue first. This Court has jurisdiction over an interlocutory appeal only if "the justices of a court of appeals disagree on a question of law material to the decision" or if "one of the courts of appeals holds differently from a prior decision of another court of appeals or of the supreme court." TEX. GOV'T CODE § 22.001(a)(1)–(2), (e); *see id.* § 22.225(c). A court "holds differently from another when there is inconsistency in their respective decisions that should be clarified to remove unnecessary uncertainty in the law and unfairness to litigants." *Id.* § 22.225(e).

Although the court of appeals' decision was unanimous, the Town asserts that the court's holding that the Town lacks authority to enforce its building codes within its ETJ conflicts with other courts of appeals' decisions, particularly *City of Lucas v. North Texas Municipal Water District*, 724 S.W.2d 811, 823–24 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) ("[O]rdinances regulating development, such as those specifying design, construction and maintenance standards, may be extended by a [general-law] city into its extraterritorial jurisdiction."). Bizios argues no conflict exists because, as the court of appeals explained, *Lucas* predates statutory changes that altered the authority on which the Town relies. 453 S.W.3d at 604. But whether the statutory changes altered the nature of the Town's authority is part of the dispute we must resolve. *Lucas* held that a general-law city could enforce its "design" and "construction" ordinances within its

3

ETJ, *Lucas*, 724 S.W.2d at 823, and the court of appeals here held that the Town could not enforce building ordinances within its ETJ, 453 S.W.3d at 605. We conclude the two holdings are sufficiently inconsistent to establish our jurisdiction over this interlocutory appeal.

### III.
### Statutory Authority

The Town argues that the Texas Local Government Code grants it authority to enforce its building codes within its ETJ. Because the Code expressly authorizes the enforcement of building codes in certain circumstances, depending on the status of the governing entity, we consider when different types of political subdivisions can enforce building codes inside corporate limits, inside ETJs, and in unincorporated areas outside corporate limits before proceeding to our analysis of the current dispute.

Municipalities are creatures of law that are "created as political subdivisions of the state . . . for the exercise of such powers as are conferred upon them . . . . They represent no sovereignty distinct from the state and possess only such powers and privileges as have been expressly or impliedly conferred upon them." *Payne v. Massey*, 196 S.W.2d 493, 495 (Tex. 1946). Texas law recognizes three types of municipalities: home-rule municipalities, general-law municipalities, and special-law municipalities. *See Forwood v. City of Taylor*, 214 S.W.2d 282, 285 (Tex. 1948). The nature and source of a municipality's power depends on the type of municipality. *See Laidlaw Waste Sys. (Dall.), Inc. v. City of Wilmer*, 904 S.W.2d 656, 658 (Tex. 1995) ("Laws expressly applicable to one category [of municipalities] are not applicable to others.").

Home-rule municipalities "derive their powers from the Texas Constitution" and "possess 'the full power of self government and look to the Legislature not for grants of power, but only for limitations on their power.'" *In re Sanchez*, 81 S.W.3d 794, 796 (Tex. 2002) (quoting *Dall.*

4

*Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993)). Statutory limitations on home-rule municipal authority are ineffective unless they appear with "unmistakable clarity," and even when they do, a municipality's ordinance is only "unenforceable to the extent it conflicts with [a] state statute." *Id.* Therefore, home-rule municipalities inherently possess the authority to adopt and enforce building codes, absent an express limitation on this authority. Unlike home-rule municipalities, general-law municipalities, such as the Town, "are political subdivisions created by the State and, as such, possess [only] those powers and privileges that the State expressly confers upon them." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004).

The Local Government Code expressly authorizes every municipality to adopt, administer, and enforce residential and commercial building codes "in [the] municipality." TEX. LOC. GOV'T CODE §§ 214.212 (providing the International Residential Code (IRC) applies to residential buildings "in a municipality," and permitting municipalities to locally amend and enforce the IRC), .216 (providing the International Building Code (IBC) applies to commercial buildings "in a municipality," and permitting municipalities to locally amend and enforce the IBC). The parties do not dispute that these sections empower a municipality to enforce its building codes within its city limits, but these sections do not authorize a municipality to enforce its building codes within its ETJ or elsewhere beyond its corporate limits. Because a general-law municipality only has those powers that the Legislature grants it, *Sunset Valley*, 146 S.W.3d at 645, we must decide whether any other statutes authorize the Town to enforce its building codes within its ETJ.

The Local Government Code contains numerous provisions that grant a wide variety of powers to general-law municipalities.[3] The Town argues that sections 212.002, 212.003, 214.904, and 233.153 either expressly or impliedly grant the Town power to enforce its building codes within its ETJ. We do not agree.

## A. Sections 212.002 and 212.003

Section 212.002 provides that "the governing body of a municipality may adopt rules governing *plats and subdivisions* of land within the municipality's jurisdiction to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality." TEX. LOC. GOV'T CODE § 212.002 (emphasis added). Section 212.003 then provides that the "governing body of a municipality by ordinance may *extend to the extraterritorial jurisdiction* of the municipality the application of municipal ordinances adopted under Section 212.002." *Id.* § 212.003(a) (emphasis added). Together, these two sections expressly give all municipalities authority to enforce rules and ordinances "governing plats and subdivisions of land" within their ETJs. *See id.* §§ 212.002, .003(a). Although section 212.002 never mentions "building codes," "building permits," "design," or "construction," the Town contends that building codes and building-permit requirements are "rules governing plats and subdivisions." We disagree.

Because the statute does not define the terms "plat" and "subdivision," we must give them their "common" and "ordinary" meanings that are "in harmony with and . . . consistent with

---

[3] *See, e.g.*, TEX. LOC. GOV'T CODE §§ 211.001–.033 (zoning); *id.* §§ 212.001–.904 (subdivisions and property development); *id.* §§ 213.001–.005 (comprehensive plans); *id.* §§ 214.001–.905 (housing and other structures); *id.* §§ 215.002–.075 (businesses and occupations); *id.* §§ 216.001–.903 (signs); *id.* §§ 217.001–.042 (nuisances and disorderly conduct); *id.* §§ 229.001–.055 (miscellaneous authority of municipalities); *id.* §§ 241.001–.903 (airports); *id.* §§ 242.001–.003 (subdivisions in and outside ETJ); *id.* §§ 243.001–.011 (sexually oriented business); *id.* §§ 244.001–.026 (location of facilities and shelters); *id.* §§ 245.001–.007 (local permits); *id.* §§ 246.001–.004 (telecommunications facilities); *id.* §§ 250.001–.007 (miscellaneous authority of municipalities and counties).

relevant provisions of the statute. And when a word is used throughout a statute, we generally construe the statute to provide consistent meaning to that word." *Beeman v. Livingston*, 468 S.W.3d 534, 539 (Tex. 2015) In light of the common meanings of the terms "plat" and "subdivision," the context in which they appear in section 212.002, and their usage in other sections of the Local Government Code, we conclude that section 212.002 does not address building codes.

In common usage, the term "plat" refers to a "small piece of land set apart for some special purpose" and to a "map or plan of delineated or partitioned ground." *Plat*, BLACK'S LAW DICTIONARY (10th ed. 2014). And the term "subdivision" refers to the "division of a thing into smaller parts" and to a "parcel of land in a larger development." *Subdivision*, *id.* Both terms refer to the division of "land" or "ground," and in fact section 212.002 expressly refers not just to "rules governing plats and subdivisions" but to "rules governing plats and subdivisions *of land*." TEX. LOC. GOV'T CODE § 212.002 (emphasis added). By contrast, a "building code" is a "law or regulation setting forth standards for the construction, maintenance, occupancy, use, or appearance of buildings and dwelling units." *Building Code*, BLACK'S LAW DICTIONARY (10th ed. 2014).

In other sections, the Code consistently uses the terms "plat" and "subdivision" in ways that confirm that, consistent with their ordinary meanings, these terms refer to rules governing the development of land, not the construction of buildings. Section 212.004, for example, requires the "owner of a *tract of land* . . . who divides the tract in two or more parts to lay out a *subdivision of the tract*" and to "have a *plat of the subdivision* prepared." TEX. LOC. GOV'T CODE § 212.004(a) (emphasis added). By its own terms, this section confirms that the "plat of the subdivision" required is for a "division of a tract" and a "division of land." *Id.* Similarly, section 212.0045

7

provides that, to "determine whether specific *divisions of land* are required to be *platted*, a municipality may define and classify the divisions" but "need not require *platting* for every *division of land*." *Id.* § 212.0045 (emphases added). And section 212.010 requires municipalities to "approve a plat" if it conforms to the city's general plan for "streets, alleys, parks, playgrounds, and public utility facilities." *Id.* § 212.010. Consistently, chapter 212 uses the terms "plat" and "subdivision" to refer to the division and development of land, not to the subsequent construction of buildings on such land.

Challenging these ordinary meanings, the Town notes that section 212.002 permits cities to adopt "rules governing plats and subdivisions of land . . . to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful *development* of the municipality." *Id.* § 212.002 (emphasis added). Focusing on the term "development" and contending that building codes promote health and safety, the Town argues that section 212.002 authorizes municipalities to govern all aspects of the "development" of subdivided land, including the construction of buildings on the resulting tracts. In support of this argument, the Town points to section 212.043, which defines the term "development" as "the new construction or the enlargement of any exterior dimension of any building, structure, or improvement." *Id.* § 212.043(1). However, this definition applies specifically to provisions in subchapter B of Chapter 212, and does not apply to section 212.002, which is in subchapter A of Chapter 212. *See id.* (providing definitions for terms "[i]n this subchapter").

Subchapter B applies only when a city "chooses by ordinance to be covered by [that] subchapter." *Id.* § 212.041. It defines the term "development" to inform its use of the term "development plat," which is different from the "subdivision plat" that subchapter A addresses.

*Id.* § 212.045(d). Specifically, when a city chooses to operate under subchapter B, any "person who proposes the *development* of *a tract* of land" is required to "have a *development plat* of the tract prepared in accordance with this subchapter and the applicable plans, rules, or ordinances of the municipality." *Id.* § 212.045(a) (emphases added). Subchapter B distinguishes a "subdivision plat" from a "development plat": "If a person is required under Subchapter A or an ordinance of the municipality to file a *subdivision plat*, a *development plat* is not required in addition to the subdivision plat." *Id.* § 212.045(d) (emphases added). And subchapter A confirms that the "plat" to which it refers is different from the "development plat" that subchapter B addresses: "In lieu of a *plat* contemplated by [subchapter A], a municipality may require the filing of a *development plat* under Subchapter B if that subchapter applies to the municipality." *Id.* § 212.0045(b) (emphases added).

Unlike subchapter A, subchapter B requires plats that reflect plans for the "development" (as opposed to the "subdivision") of tracts, meaning plats that contain plans for "the new construction or the enlargement of any exterior dimension of any building." *Id.* § 212.043(1). But even subchapter B, which covers construction and enlargement of building exteriors, expressly prohibits the city from enforcing its building codes and building-permit requirements in its ETJ: "This subchapter does not authorize the municipality to require municipal building permits or otherwise enforce the municipality's building code in its extraterritorial jurisdiction." *Id.* § 212.049.

We therefore reject the Town's argument that, by permitting cities to enforce their "rules governing plats and subdivisions . . . to promote . . . the safe, orderly, and healthful development of the municipality," section 212.002 authorizes general-law cities to enforce building codes and

9

building-permit requirements. *Id.* § 212.002. Section 212.003, which authorizes cities to enforce their "rules governing plats and subdivisions" within their ETJs, actually indicates the contrary by providing that, "unless otherwise authorized by state law, in its extraterritorial jurisdiction a municipality shall not regulate . . . the bulk, height, or number of buildings constructed on a particular tract of land" or "the size of a building that can be constructed on a particular tract of land." *Id.* § 212.003(a)(2)–(3).

Based on the plain language of subsections 212.002 and 212.003, and the broader context surrounding those subsections, we conclude that they do not expressly authorize general-law municipalities to enforce their building codes and building-permit requirements within their ETJs.

**B.     Sections 214.904 and 233.153**

The Town also relies on sections 214.904 and 233.153, and contends that these sections "confirm" that general-law municipalities have authority under sections 212.002 and 212.003 to enforce their building codes within their ETJs. Again, we disagree. While sections 214.904 and 233.153 recognize that other statutes may grant such authority to municipalities, they neither confirm that sections 212.002 and 212.003 grant such authority to general-law municipalities nor expressly grant such authority themselves.

Section 214.904 requires municipalities to grant or deny an application for a building permit within forty-five days after an application is submitted, TEX. LOC. GOV'T CODE § 214.904(b),[4] and provides that "[t]his section applies only to a permit required by a municipality to erect or improve a building or other structure in the municipality or *its extraterritorial*

---

[4] In limited circumstances, a municipality may have up to seventy-five days to grant or deny a permit. *See* TEX. LOC. GOV'T CODE § 214.904(c).

10

*jurisdiction.*" TEX. LOC. GOV'T CODE § 214.904(a) (emphasis added).[5] Similarly, section 233.153 authorizes certain counties to enforce building codes on single-family residences and duplexes within the county's unincorporated areas, but provides that, if "a municipality located within a county to which this subchapter applies has adopted a building code *in the municipality's extraterritorial jurisdiction*, the building code adopted by the municipality controls and building code standards under this subchapter have no effect in the municipality's extraterritorial jurisdiction." *Id.* § 233.153(a).[6]

The Town argues that these sections authorize all municipalities to enforce their building codes in their ETJs. We disagree. While the references in these sections to the enforcement of municipal building codes within ETJs recognize that other statutes may expressly grant such authority to general-law municipalities, or that home-rule cities may inherently have such authority, they do not expressly grant such authority themselves, and the Town does not rely on any other statutes.[7]

---

[5] Chapter 214 adopts the model International Residential Code (IRC) as the municipal residential building code of Texas, which "applies to all construction, alteration, remodeling, enlargement, and repair of residential structures *in a municipality.*" *Id.* § 214.212(a)–(b) (emphasis added). Section 214.212 authorizes municipalities to "establish procedures" to adopt amendments to the IRC, and to administer and enforce the IRC. *Id.* § 214.212(c).

Chapter 214 also adopts the model International Building Code (IBC) as the municipal commercial building code of Texas, which "applies to all commercial buildings *in a municipality* for . . . any alteration, remodeling, enlargement, or repair of those commercial buildings." *Id.* § 214.216(a)–(b) (emphasis added). Just as municipalities are authorized to "establish procedures" to adopt amendments to the IRC, municipalities are also authorized to "establish procedures" to adopt amendments to the IBC, and to administer and enforce the IBC. *Id.* § 214.216(c).

Both section 214.212 and section 214.216 expressly authorize administration and enforcement of the IRC and IBC "in a municipality." *Id.* §§ 214.212(b)–(c), .216(b)–(c). However, neither section 214.212 nor section 214.216 expressly authorize administration or enforcement of the IRC or IBC in an ETJ, and neither can be read to grant such authority.

[6] Subchapter F of chapter 233, in which section 233.153 appears, permits certain counties to enforce the IRC within their unincorporated areas. *Id.* § 233.153. The subchapter applies to all counties that are "located within 50 miles of an international border" or have "a population of more than 100." *Id.* § 233.152.

[7] Bizios contends, for example, that sections 214.904 and 233.153 might recognize that municipalities may enforce their building codes within their ETJs when they have entered into an industrial district agreement, *see* TEX.

11

The Town contends that the court of appeals erred in holding that the term "municipalities" in sections 214.904 and 233.153 only refers to home-rule municipalities. Noting that the Local Government Code defines the term "municipality" to include all three types of municipalities—a "[g]eneral-law municipality," a "[h]ome-rule municipality," and a "[s]pecial-law municipality," *id.* § 1.005—the Town asserts that the court of appeals erroneously limited the term to include only home-rule municipalities. We think this assertion misreads the court of appeals' opinion, which held that the mere reference to "municipalities" does not qualify as an independent grant of authority to all types of municipalities, but instead only refers to municipalities of any type that otherwise have such authority. 453 S.W.3d at 604–05. We agree with the court of appeals that the general references to "municipalities" in sections 214.904 and 233.153 do not constitute an independent grant of authority for all municipalities to enforce their building codes within their ETJs.

## C.    Implied Authority

The Town argues that, even if the Local Government Code does not expressly grant general-law municipalities authority to enforce their building codes within their ETJs, it necessarily implies such authority. In support, the Town notes that the Code establishes ETJs as a

---

LOC. GOV'T CODE § 42.044(c)(2) (permitting such an agreement to include all "other lawful terms and considerations that the parties agree to be reasonable, appropriate, and not unduly restrictive of business activities"), a planned unit district agreement, *see id.* § 42.046 (b)(3) (permitting such an agreement "to authorize enforcement by the municipality of certain municipal land use and development regulations" within the planned unit development district), or a development agreement, *see id.* § 212.172(b) (permitting such an agreement to authorize a municipality to enforce "municipal land use and development regulations," "specify the uses and development of the land," and "include other lawful terms and conditions the parties consider appropriate"); when the municipality engages in a limited purpose annexation, *see id.* § 43.121(a) (permitting home-rule city to "annex an area for the limited purposes of applying its planning, zoning, health, and safety ordinances in the area"); or seeks to regulate outdoor signs, *see id.* § 216.902 (permitting city to enforce outdoor sign regulatory ordinance). While we need not and do not determine today whether any of these statutes permit a municipality to enforce its building codes within its ETJ, we acknowledge that sections 214.904 and 233.153 recognize that municipalities in general may have such authority.

means to "promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities," *id.* § 42.001, and that sections 212.002 and 212.003 authorize municipalities to "adopt rules governing plats and subdivisions" for that same purpose, *id.* § 212.002 (authorizing such rules "to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality"). Because the Code requires general-law municipalities to protect health, safety, and welfare of persons living adjacent to the city limits, and because building codes accomplish that objective, the Town contends that the Code must impliedly allow "the same building standards to apply both in a city's limits and in its ETJ. Otherwise, there would be an incongruity of building standards, including an exposure of persons to unsafe structures in the ETJ."

As we have previously explained, however, general-law municipalities have "only such implied powers as are reasonably necessary to make effective the powers expressly granted. That is to say, such as are *indispensable* to the declared objects of the [municipalities] and the accomplishment of the purposes of [their] creation." *Tri-City Fresh Water Supply Dist. No. 2 of Harris Cty. v. Mann*, 142 S.W.2d 945, 947 (Tex. 1940) (emphasis added); *see also Foster v. City of Waco*, 255 S.W. 1104, 1106 (Tex. 1923) ("A municipal power will be implied only when without its exercise the expressed duty or authority would be rendered nugatory."). Thus, we strictly construe general-law municipal authority and "[a]ny fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the [municipality], and the power is denied." *Foster*, 255 S.W. at 1106.

As explained above, the only express power that sections 212.002 and 212.003 grant is the authority to enforce ordinances regulating "plats and subdivisions"—not "building codes"—

within ETJs. *See* TEX. LOC. GOV'T CODE § 212.002, .003(a). The Town's authority to regulate plats and subdivisions in its ETJ would not be "rendered nugatory" without the authority to also enforce its building codes within its ETJ, nor is the authority to extend building codes in its ETJ "reasonably necessary" or "indispensible" to its authority to regulate platting and subdivisions. In fact, the Town has an ordinance regulating platting and subdivision (the Subdivision Ordinance) that is separate from its building code ordinance. *See* TOWN OF LAKEWOOD VILLAGE, TEX., ORD. 14-13. The Subdivision Ordinance expressly states that the Town "is authorized and empowered to apply the Town's regulations for subdivisions and property development to its ETJ pursuant to Section 212.003 of the Texas Local Government Code," *id.*, indicating that the Town understands the scope of its platting and subdivision authority under sections 212.002 and 212.003(a), and that the authority to enforce building codes in its ETJ is not "reasonably necessary" or "indispensible" to its ability to regulate platting and subdivision.

When construing statutes to determine the authority of a general-law municipality, any "fair, reasonable, substantial doubt concerning the existence of power [must be] resolved . . . against the [municipality]." *Foster*, 255 S.W. at 1106. Applying this standard, we conclude that the Local Government Code does not impliedly authorize general-law municipalities to enforce their building codes within their ETJs.

The Town argues that our holding will "serve as the foundation to strip general-law cities of many long-recognized powers in the Local Government Code." *See, e.g.*, TEX. LOC. GOV'T CODE § 215.003 (authorizing municipalities to regulate rendering plants located within city limits or within one mile of city limits to protect residents from health hazards related to waste animal tissue processing plants); *id.* § 216.902 (authorizing certain municipalities to extend outdoor sign

14

regulation to ETJs); *id.* § 251.001 (authorizing the exercise of eminent domain inside or outside corporate limits); *id.* § 331.001 (authorizing municipalities to regulate park land outside corporate limits); *id.* § 372.003 (authorizing municipalities to undertake improvement project in ETJs); *id.* § 377.002 (authorizing creation of municipal development districts in ETJs); *id.* § 380.001 (authorizing economic development programs in ETJs); *id.* § 382.109 (requiring road projects to meet all applicable "construction standards" of each municipality in whose city limits or ETJ a district improvement project is located); *id.* § 395.011 (authorizing impact fees in the "service area" that is within the corporate limits or ETJ of a political subdivision to be served by the capital improvements or facilities expansions). However, the Town's concern is misplaced. While we need not and do not construe each of these sections today, our conclusion that the Code does not expressly or impliedly grant general-law municipalities authority to enforce building codes in ETJs does not affect whether the Code expressly grants them different powers. Our holding does not affect any "long-recognized powers in the Local Government Code," and whether general-law municipalities have such powers depends on whether the Code expressly grants such municipalities those powers.

## IV.
## Public Policy

In addition to its statutory arguments, the Town and its supporting amici raise several compelling public-policy arguments in support of the position that general-law municipalities can enforce building codes within their ETJs. Reflecting its implied-authority argument, the Town contends that general-law municipalities have a duty to protect the health and safety of those who reside within or near their city limits, and the ability to apply uniform building requirements in both areas is essential to the fulfillment of that duty. Relatedly, the Town asserts that such authority

15

is inherent within its police powers for the same policy reasons. *See City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 804 (Tex. 1984) (noting that all property is held subject to the valid exercise of the police power); *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982) (noting that city may enact reasonable regulations to promote the health, safety, and general welfare of its people).

Several other general-law municipalities and the Texas Municipal League have submitted amicus curiae briefs in support of the Town's position. In addition to the statutory arguments we have addressed, they assert that general-law municipalities have been permitted to enforce their building codes within their ETJs for decades, and the need for uniform enforcement both within city limits and ETJs is greater now than ever due to the mass construction of large subdivisions by corporate homebuilders within previously rural areas.

Bizios discounts the Town's and its amici's policy arguments, and contends that most Texans "would argue that protecting private property rights is a more compelling principle upon which Texas was built." He contends that general-law municipalities should not be permitted to regulate how people build on their land outside of city limits, particularly when landowners in ETJs cannot vote in city council elections and the city provides no public services in the ETJs. He argues that the Code sufficiently protects public health and safety within ETJs by expressly authorizing counties to enforce building-permit requirements in unincorporated areas, just as Denton County did for his lot. *See* TEX. LOC. GOV'T CODE § 233.151–.157. And he asserts that the Town's true objective is to generate permit fees, not to promote health and safety. He concludes that the "Legislature has decided that counties can protect the health and safety of new homeowners in the ETJ, and municipalities can protect those within the corporate limits." Amici,

16

including the Texas Association of Business and the Subdivision's Property Owner's Association, filed briefs supporting Bizios's arguments.

However compelling either side's policy arguments may be, we cannot decide this case based on those concerns. Because a general-law municipality only "possess[es] those powers and privileges that the State expressly confers upon [it]," *Sunset Valley*, 146 S.W.3d at 645, a general-law municipality cannot exercise its powers outside its corporate limits unless the Legislature expressly or necessarily grants it such authority. We cannot judicially confer authority on general-law municipalities, even if we believe there are compelling public policy reasons for doing so. We must leave that choice to the policymaking branch of government.

## V.
### Conclusion

We conclude that the Texas Local Government Code does not grant general-law municipalities the authority to enforce building codes within their ETJs; thus, the Town of Lakewood Village has no authority to do so in its ETJ. We affirm the court of appeals' judgment.

_____
Jeffrey S. Boyd
Justice

Opinion delivered: May 27, 2016

17