

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

November 13, 2017

The Honorable Patrick M. Wilson
Ellis County and District Attorney
109 South Jackson
Waxahachie, Texas 75165

Opinion No. KP-0171

Re: Whether a Type A general-law municipality may collect dues on behalf of homeowners associations in exchange for partial payment of the municipality's accounting expenses (RQ-0163-KP)

Dear Mr. Wilson:

You ask whether a Type A general-law municipality may collect dues on behalf of homeowners associations ("HOAs") in exchange for partial payment of the municipality's accounting expenses.[1] The brief attached to your request states that the City of Ovilla (the "City") is a Type A general-law municipality. Brief at 1; *see also* TEX. LOC. GOV'T CODE §§ 5.001, 6.001. The brief explains that pursuant to the City's agreements with two HOAs, the City's monthly water utility bill to these HOA members includes a charge for their monthly HOA dues. Brief at 1–2. The City disburses the dues to the respective HOAs, which in return pay the City for a portion of the City's accounting software maintenance and service costs. *Id.* at 2. According to the brief, the "accounting software was not needed for the collection and accounting of water utility bills; it was purchased exclusively for the purpose of accounting for the collection of HOA member dues." *Id.* at 1 n.1. The brief states that the City now questions whether it may lawfully continue to provide dues collection services to the HOAs. *Id.* at 2.

We begin by considering the nature of HOA dues. As pertinent here, an HOA, also known as a property owners association, is an incorporated or unincorporated association that

> (A) is designated as the representative of the owners of property in a residential subdivision;
>
> (B) has a membership primarily consisting of the owners of the property covered by the dedicatory instrument for the residential subdivision; and

---

[1]*See* Letter from Honorable Patrick M. Wilson, Ellis Cty. & Dist. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (May 22, 2017) and attached brief from Mr. Ron G. MacFarlane, Jr., on behalf of the City of Ovilla (May 17, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinions-rqs ("Request Letter" and "Brief," respectively).

(C) manages or regulates the residential subdivision for the benefit
of the owners of property in the residential subdivision.

TEX. PROP. CODE § 209.002(7); *see also id.* § 209.003(a)–(b) (stating that chapter 209 applies only to a residential subdivision subject to restrictions in a declaration making HOA membership mandatory and authorizing HOA assessments on property in the subdivision). An HOA's dedicatory instrument governs "the establishment, maintenance, and operation of a residential subdivision," and restrictive covenants in the dedicatory instrument obligate property owners to pay assessments to the HOA. *Id.* § 209.002(4). A regular assessment, including dues, must be "designated for use by the [HOA] for the benefit of the residential subdivision as provided by" restrictive covenants in a dedicatory instrument filed in appropriate property records. *Id.* § 209.002(8)–(11). An HOA may use a special assessment, including dues, for certain capital improvements in or maintenance and improvement of common areas, or "other purposes of the [HOA] as stated in its articles of incorporation or the dedicatory instrument for the residential subdivision." *Id.* § 209.002(12)(C). In sum, the obligation to pay HOA dues derives from a contractual relationship among private property owners and their representative, the HOA; the HOA must use dues only for the benefit of the private property owners. *See generally Baywood Estates Prop. Owners Ass'n, Inc. v. Caolo*, 392 S.W.3d 776, 782–84 (Tex. App.—Tyler 2012, no pet.) (enforcement of HOA assessments through restrictive covenants); *Harris Cty. Flood Control Dist. v. Glenbrook Patiohome Owners Ass'n*, 933 S.W.2d 570, 580 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (stating that HOA covenants and restrictions are construed according to the same construction principles applicable to contracts); *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 547 (Tex. App.—Houston [1st Dist.] 1994, no writ) (stating that restrictive covenants for property owners to pay a subdivision's maintenance fee are "treated as contracts among the parties").

Next, we consider the authority of a general-law municipality such as the City. "General-law municipalities . . . are political subdivisions created by the State and, as such, possess those powers and privileges that the State expressly confers upon them." *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 645 (Tex. 2004); TEX. CONST. art. XI, § 4. A statutory grant of authority includes implied powers, but only those "as are reasonably necessary to make effective the powers expressly granted. That is to say, such as are *indispensable* to the declared objects of the [municipalities] and the accomplishment of the purposes of [their] creation." *Town of Lakewood Vill. v. Bizios*, 493 S.W.3d 527, 536 (Tex. 2016) (quotation marks omitted). Therefore, courts "strictly construe general-law municipal authority and [a]ny fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the [municipality], and the power is denied." *Id.* (quotation marks omitted).

Chapter 51 of the Local Government Code generally authorizes a governing body of a municipality to adopt an ordinance "that: (1) is for the good government, peace, or order of the municipality or for the trade and commerce of the municipality; and (2) is necessary or proper for carrying out a power granted by law to the municipality or to an office or department of the municipality." TEX. LOC. GOV'T CODE § 51.001. A Type A general-law municipality may adopt an ordinance "that is necessary for the government, interest, welfare, or good order of the municipality as a body politic." *Id.* § 51.012. However, no statute expressly grants a Type A

general-law municipality authority to provide debt collection services to a private entity such as an HOA.

According to the brief, the proponents of the billing practice argue "that collecting dues on behalf of the HOAs serves the welfare and good order of the municipality because the dues, once turned over to the HOAs, are used for the maintenance of property which, in turn, maintains and promotes property values in the City." Brief at 2. However, the City's statutory authority allows it to adopt ordinances only as "necessary for the government, interest, welfare, or good order *of the municipality as a body politic.*" TEX. LOC. GOV'T CODE § 51.012 (emphasis added). From the materials you submitted, it appears that HOA dues are unrelated to the City's provision of utility services or any other municipal function or purpose, but instead are to be used for the direct benefit of individual property owners. *See* Brief at 1–2 & n.1; *see also* TEX. PROP. CODE § 209.002(8) (defining "regular assessment" as a required payment to the HOA "that is designated for use by the [HOA] for the benefit of the residential subdivision"). A court would likely conclude that a Type A general-law municipality's authority to enact ordinances does not imply the authority to collect fees for an HOA, because such authority is not "indispensable" or "necessary for the government, interest, welfare, or good order of the municipality as a body politic." *See* TEX. LOC. GOV'T CODE § 51.012; *Bizios*, 493 S.W.3d at 536.[2] Therefore, a Type A general-law municipality does not possess the authority to collect dues on behalf of an HOA.[3]

---

[2]In other circumstances, this office determined that the general powers of a limited-authority governmental entity do not impliedly authorize it to collect funds for other parties or for purposes unrelated to the entity's express powers. *Cf.* Tex. Att'y Gen. Op. Nos. GA-0774 (2010) at 4–5 (determining that school districts are not expressly or impliedly authorized to process payroll deductions for contributions to political committees); GA-0084 (2003) at 9–10 (determining that a general-law city was not authorized to collect a fee included in a city's water bill to pay a volunteer firefighter association); JM-338 (1985) at 1–2 (determining that a fee included in a city utility bill for maintenance of the police department was an unauthorized tax).

[3]Because we conclude that a Type A general-law municipality does not possess express or implied authority to collect HOA dues, we do not consider a related question, whether the use of municipal resources to directly benefit private interests constitutes an unconstitutional gift. *See* TEX. CONST. art. III, § 52(a); *see also* Tex. Att'y Gen. Op. No. KP-0035 (2015) at 3 (determining that article III, subsection 52(a) requires that a municipality utilize municipal resources "only to serve public purposes that are within the municipality's powers, not merely to benefit the public in general" (citing *State ex rel. Grimes Cty. Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd)).

## S U M M A R Y

A Type A general-law municipality does not possess the authority to collect dues on behalf of a homeowners association.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

WILLIAM A. HILL
Assistant Attorney General, Opinion Committee