CRAIG STODDART, JUSTICE
The primary issue in this appeal is whether the City of McKinney, Texas, a home-rule municipality, has authority to enforce its building codes and platting requirements within its extraterritorial jurisdiction. Based on the facts in this appeal, Collin County, Texas, and Custer Storage Center, LLC argue that it does not. We conclude the City of McKinney lacks authority to enforce its building codes and related building inspection requirements within its extraterritorial jurisdiction, but it has authority to require a landowner to plat its property. We affirm the trial court's judgment in part, reverse the judgment in part, modify the judgment in part, render the judgment the trial court should have rendered, and remand the issue of attorney's fees for further proceedings.
BACKGROUND
A. Factual Background
The City of McKinney ("City") is a home-rule municipality. In 2002, the City and Collin County ("County") entered into an agreement titled City-County Approval Agreement, which was made pursuant *82 to House Bill 1445 ("1445 Agreement").[1] The agreement states H.B. 1445 required the City and County to identify which governmental entity was authorized "to regulate subdivision plats and approve related permits" in the City's extraterritorial jurisdiction ("ETJ").[2] Through the 1445 Agreement, the parties granted the City exclusive jurisdiction to regulate subdivision plats and approve related permits for property in the City's ETJ and authorized the City Secretary to accept plat applications, collect plat application fees, and respond to applicants with the approval or denial of the plat application for tracts of land located in the City's ETJ.
Custer Storage Center, LLC ("Custer") owns land located in the County and within the City's ETJ. Custer developed the land and now operates a self-storage facility. As part of the development, the property was not subdivided or platted. Custer acquired building permits from the County[3] but did not seek or acquire such permits from the City. When the City became aware of Custer's construction project, it instructed Custer to obtain City building permits. After Custer failed to do so, the City filed this lawsuit seeking declaratory relief and a permanent injunction. The City requested the court declare, among other things, that Custer was required to obtain plat approval and building permits from the City but refused to do so. The City asked for a permanent injunction requiring Custer to correct violations at its property within a reasonable amount of time and enjoining the County from issuing building permits for development occurring in the City's ETJ. In response, Custer sought a declaratory judgment that, among other things, the City lacked authority to require development permits for property in its ETJ and Custer was not required to obtain plat approval from the City. Custer also sought a permanent injunction enjoining the City from taking any action to require Custer to obtain plat and building permit approval. The County did not assert any causes of action.
B. Summary Judgment Proceedings
Each party filed a motion for summary judgment. The County argued the City lacks authority to impose its regulatory power over building construction in the City's ETJ and the permits issued by the County to Custer were lawful. The City filed a motion for partial summary judgment seeking a declaration that the City has lawful authority-to the exclusion of the County-to require landowners developing property in its ETJ to obtain building permits, inspections and approvals, and pay related fees[4] to the City and Custer was required, but failed, to obtain City building permits in order to lawfully develop its self-storage facility on a property in the City's ETJ. Custer argued, among other things, the City lacked authority to require building permits for property being developed in its ETJ and Custer was not required to obtain plat approval from *83 the City. All parties sought to recover their attorney's fees.
Following a hearing, the trial court granted and denied each party's motion in part. In its judgment, the trial court concluded that the City's and County's respective authority to enforce platting and building permit requirements for property in the City's ETJ is determined based on whether a property is subdivided. The trial court's final judgment states in part:
The Court finds that the City has the lawful authority to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees in those instances, but only in those instances, where the property at issue is subdivided and lawfully required to obtain plat approval from the City. In those instances where the property at issue is not subdivided and [not] lawfully required to obtain plat approval from the City, the City lacks the lawful authority to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees.
The trial court found the 1445 Agreement is valid and enforceable and the County ceded all platting, inspection, and building code authority in the ETJ to the City as to properties that are subdivided, but did not do so as to properties that are not subdivided.
The court concluded Custer was not required to obtain plat approval or building permits from the City because its property was not subdivided. The trial court declared Custer legally developed its property pursuant to the permits issued by the County and those permits were lawful, valid, and within the statutory authority granted to the County.
The trial court awarded attorney's fees to Custer but ordered the City and County bear their own attorney's fees and costs. This appeal followed.
ISSUES ON APPEAL
The County argues two issues in this appeal: the trial court erred by concluding the City has the lawful authority to require landowners developing property located in the City's ETJ to obtain building permits in those instances where the property at issue is subdivided and the trial court abused its discretion by failing to award attorney's fees to the County. Custer, which asserts no separate issues on appeal, agrees the City lacks authority to require building permits for property in the City's ETJ. In its cross-appeal, the City argues it has authority to require City building permits for all property developed in its ETJ; Custer was required, but failed to, obtain City building permits and obtain plat approval from the City to lawfully develop its self-storage facility; and the trial court abused its discretion by awarding attorney's fees to Custer.
LAW & ANALYSIS
A. Standard of Review
The trial court's judgment primarily rests upon its construction of the Texas Local Government Code, which we review de novo. See City of Garland v. Dallas Morning News , 22 S.W.3d 351, 357 (Tex. 2000). When reviewing matters of statutory construction, our primary objective is to ascertain and give effect to the Legislature's intent without unduly restricting or expanding the statute's scope. Janvey v. Golf Channel, Inc. , 487 S.W.3d 560, 572 (Tex. 2016). When seeking the Legislature's intent, we first look to the statutory text. Greater Hous. P'ship v. Paxton , 468 S.W.3d 51, 58 (Tex. 2015). We derive the Legislature's intent from the plain meaning of the text construed in *84 light of the statute as a whole. Janvey , 487 S.W.3d at 572. "The terms of a statute bear their ordinary meaning unless (1) the Legislature has supplied a different meaning by definition, (2) a different meaning is apparent from the context, or (3) applying the plain meaning would lead to absurd results." Id. To determine a statutory term's common, ordinary meaning, we typically look first to its dictionary definitions and then consider the term's usage in other statutes, court decisions, and similar authorities. Tex. State Bd. of Examiners of Marriage & Family Therapists v. Tex. Med. Ass'n , 511 S.W.3d 28, 35 (Tex. 2017) ; see also Hardy v. Commc'n Workers of Am. Local 6215 AFL-CIO , 536 S.W.3d 38, 45 (Tex. App.-Dallas 2017, pet. denied).
We also apply a de novo standard of review to the extent this appeal requires us to interpret the 1445 Agreement. See Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n , 205 S.W.3d 46, 56 (Tex. App.-Dallas 2006, pet. denied) (applying de novo standard of review where contract is unambiguous). When construing a contract, we ascertain and effectuate the parties' intent as expressed in the agreement. Id. at 55. We consider the contract as a whole, and we attempt to harmonize and give effect to all its provisions. Id.
B. Building Permits in the City's ETJ
In its first issue, the County argues the trial court erred by concluding the City has lawful authority to require a landowner developing property in the City's ETJ to obtain building permits and plat approval when the property at issue is subdivided. The City disagrees and argues in its first three issues that (1) as a home-rule city it has the lawful authority to require all landowners developing property in its ETJ to obtain City building permits; (2) the 1445 Agreement limits the County's ability to require landowners developing property in the ETJ to obtain County building permits; and (3) Custer was required to obtain City building permits.
Texas law recognizes three types of municipalities: home-rule municipalities, general-law municipalities, and special-law municipalities. Town of Lakewood Vill. v. Bizios , 493 S.W.3d 527, 530 (Tex. 2016). The nature and source of a municipality's power depends on which type of municipality it is. Id. at 531. Home-rule municipalities such as the City derive their powers from the Texas Constitution and "possess the full power of self government and look to the Legislature not for grants of power but only for limitations on their power." Id. at 531 (quoting In re Sanchez , 81 S.W.3d 794, 796 (Tex. 2002) ) (internal quotation marks omitted). "[H]ome-rule municipalities inherently possess the authority to adopt and enforce building codes, absent an express limitation on this authority." Id. However, while a home-rule municipality derives its powers from the state constitution, the extraterritorial jurisdiction of a municipality is created by the Legislature. See TEX. LOCAL GOV'T CODE § 42.001 ("The legislature declares it the policy of the state to designate certain areas as the extraterritorial jurisdiction of municipalities to promote and protect the general health, safety, and welfare of persons residing in and adjacent to the municipalities."). The parties dispute whether the City's status as a home-rule municipality vests the City with authority to require landowners developing property in its ETJ to obtain City building permits.
The Texas Supreme Court considered a similar issue in Town of Lakewood Village v. Bizios , 493 S.W.3d 527 (Tex. 2016). After discussing the three types of municipalities and the nature and sources of their powers, the court examined numerous sections of the Texas Local Government *85 Code. The court began by stating the local government code "expressly authorizes every municipality to adopt, administer, and enforce residential and commercial building codes in the municipality." Bizios , 493 S.W.3d at 531 (emphasis added) (discussing local government code sections 214.212 and 214.216 that apply specified building codes "in a municipality"). While these sections empower every municipality to enforce its building codes within its corporate limits, the supreme court concluded they "do not authorize a municipality to enforce its building codes within its ETJ or elsewhere beyond its corporate limits." Id. The supreme court's discussion applies to "every municipality " without distinction. Id. (emphasis added). The court did not limit its considerations to the general-law municipalities that were primarily at issue in Bizios . Although the court could have differentiated between home-rule and general-law municipalities and concluded, as the City argues, that the former is authorized to enforce its building codes within its ETJ because of its expansive constitutional powers while the latter is not, the court did not do so. Rather, it used the phrase "every municipality ," which includes a home-rule municipality such as the City.
While sections 214.212 and 214.216 provide for the applicability of building codes "in a municipality," section 212.002 states that "the governing body of a municipality may adopt rules governing plats and subdivisions of land within the municipality's jurisdiction." TEX. LOC. GOV'T CODE § 212.002. Section 212.003 authorizes a municipality to extend ordinances adopted under section 212.002 to its ETJ. Id. § 212.003(a); see also Bizios , 493 S.W.3d at 532. "Together, these two sections expressly give all municipalities authority to enforce rules and ordinances 'governing plats and subdivisions of land' within their ETJs." Bizios , 493 S.W.3d at 532 (emphasis added) (quoting TEX. LOC. GOV'T CODE §§ 212.002, .003(a) ). If a home-rule municipality had inherent authority to exercise these powers in its ETJ, section 212.003 would be superfluous as applied to home-rule municipalities. We will not read the statute to accomplish such a result. See State v. Gonzalez , 82 S.W.3d 322, 327 (Tex. 2002) (courts read statute as a whole and interpret it to give effect to every part). Such an interpretation also would be inconsistent with the Bizios opinion and existing case law. See Bizios , 493 S.W.3d at 532 ; City of Lubbock v. Phillips Petroleum Co. , 41 S.W.3d 149, 159 (Tex. App.-Amarillo 2000, no pet.) ("[I]t is the general rule that a city may only exercise its powers within its corporate limits unless its authority is expressly extended."); Austin v. Jamail , 662 S.W.2d 779 (Tex. App.-Austin 1983, writ dism'd w.o.j.) ("A city must have express (or implied when such power is reasonably incident to those expressly granted) statutory authority to exercise its extraterritorial power.").
Based on the Texas Supreme Court's opinion in Bizios , opinions from our sister courts, and relevant provisions of the local government code, we conclude every municipality, including a home-rule municipality, requires legislative authorization to enforce building codes beyond its corporate limits. We have not found any legislative authorization giving the City the power it seeks to exercise, and the City does not cite any in its brief. Therefore, we conclude the City lacks authority to require a landowner developing property in its ETJ to obtain City building permits, inspections and approvals, and pay related fees. We sustain the County's first issue to this extent, and we overrule the City's first issue.
In its second issue, the City argues the 1445 Agreement limits the County's power to require building permits for *86 property in the City's ETJ. In the 1445 Agreement, the parties granted the City exclusive jurisdiction to regulate subdivision plats and approve related permits for property in the City's ETJ and authorized the City Secretary to accept plat applications, collect plat application fees, and respond to applicants with the approval or denial of the plat application for tracts of land located in the City's ETJ. By its plain language, the 1445 Agreement, as well as section 242.001(c) of the local government code which instructed the parties to adopt the agreement, only applies to platting. Nothing in the agreement touches on building permits and it cannot be interpreted to give the City authority over building permits for property in the City's ETJ.
The City's assertion is similar to one addressed in Bizios. The Bizios court rejected the argument that the phrase "rules governing plats and subdivisions" as used in local government code section 212.002 included "building codes," "building permits," "design," or "construction." Bizios , 493 S.W.3d at 532. The Court stated the phrase "rules governing plats and subdivisions" only addresses the development of land and not the construction of buildings. Id.
Just as a statute enabling a municipality to govern subdivisions and plats of land does not also authorize the municipality to require building permits or apply its building codes, see ids="6784654" index="28" url="https://cite.case.law/sw3d/493/527/#p530">id. , neither does the 1445 Agreement nor its enabling statute. We conclude the County did not cede this authority to the City. We overrule the City's second issue.
In light of our discussion above, we conclude Custer was not required to obtain building permits, inspections and approvals from, and pay related fees to the City. We overrule the City's third issue.
C. Platting of Custer's Property
In its fourth issue, the City argues the trial court erred by concluding Custer was not required to obtain plat approval from the City. The 1445 Agreement grants exclusive jurisdiction to the City, not the County, to regulate all subdivision plats and related permits for property in the City's ETJ. Pursuant to the 1445 Agreement, Custer was required to file a plat with and obtain plat approval from the City. Custer failed to do so.
The governing body of a municipality may adopt rules governing plats and subdivisions of land within the municipality's jurisdiction and may extend these rules to its ETJ. See TEX. LOC. GOV'T CODE §§ 212.002 -.003. The City adopted subdivision regulations pursuant to chapter 212 of the local government code. MCKINNEY , TEX. CODE OF ORDINANCES § 142-3 (2008). Section 142-5(a) of the code of ordinances states:
Unless and until any plat, plan, or replat shall have been first approved in the manner provided by law, it shall be unlawful for any person, firm, corporation, or organization to construct or cause to be constructed any streets, utilities, buildings or other improvements or to serve or connect said land, or any part thereof, or for the use of the owners or purchasers of said land, or any part thereof, with any public utilities such as water, sewers, lights, gas, etc., which may be owned, controlled, distributed, franchised, or supplied by such city.
Id. § 142-5(a).
The record shows Custer developed a self-storage facility on its property. As part of that construction, Custer received a "Permit to Construct Access Driveway Facilities on Highway Right of Way" from the Texas Department of Transportation and that permit allowed Custer to construct *87 a twenty-four foot access driveway abutting FM 2478 in the County. Based on Custer's construction and this construction permit, we conclude Custer was an organization that constructed or caused to be constructed a street or other improvement on its property. Custer, then, was required to obtain a plat before commencing that construction. See id. The trial court's ruling makes the obligation to plat contingent upon whether a property was subdivided. However, neither the City's ordinances nor chapter 212 of the local government code includes that requirement.
We conclude the trial court erred by granting Custer's request for a declaratory judgment that it was not required to obtain plat approval from the City. We overrule the County's first issue to this extent and sustain the City's fourth issue.
D. Attorney's Fees
In its second issue, the County argues the trial court abused its discretion by failing to award attorney's fees to the County under the Declaratory Judgments Act ("DJA"). In its fifth issue, the City argues the trial court abused its discretion by awarding attorney's fees to Custer under the DJA. The trial court's judgment ordered that the City and County each bear their own attorney's fees and court costs, but it awarded fees, including conditional appellate fees, to Custer.
A trial court "may award costs and reasonable attorney's fees as are equitable and just" in a declaratory judgment proceeding. See TEX. CIV. PRAC. & REM. CODE § 37.009. The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing of abuse of discretion. Hartsell v. Town of Talty , 130 S.W.3d 325, 329 (Tex. App.-Dallas 2004, pet. denied). A trial court may, in its discretion, award attorney's fees to the nonprevailing party in a declaratory judgment action. Id.
The trial court's judgment states the parties filed a Rule 11 Agreement in which they agreed and stipulated to each party's reasonable and necessary attorney's fees. However, on appeal, the County and City disagree about which party is entitled to fees based on which party prevailed. Previously when presented with a similar issue, we remanded the cause to the trial court to reconsider its award of attorney's fees in light of our reversal of the trial court's summary judgment. Id. Because we substantially modify the trial court's judgment and there is no evidence to indicate whether the trial court's award of fees would be equitable and just in light of our opinion in this case, we reverse the portions of the judgment awarding and denying requested attorney's fees and remand the issue of attorney's fees to the trial court for its reconsideration in light of this opinion. See id. We sustain the County's second issue and the City's fifth issue to this extent.
CONCLUSION
The City lacks authority to require a landowner developing property in its ETJ to obtain City building permits, inspections and approvals, and pay related fees. However, the City possesses authority-to the exclusion of the County-to regulate all subdivision plats and related permits for property in the City's ETJ.
We reverse the trial court's judgment denying in part Custer's declaratory judgment request that the City lacks authority to require building permits in the City's ETJ. We render judgment granting Custer's declaratory judgment request that the City lacks authority to require building permits in the City's ETJ. We reverse the trial court's judgment granting Custer's declaratory judgment request that it is not *88 required to obtain plat approval from the City. We render judgment denying Custer's declaratory judgment request that it is not required to obtain plat approval from the City. We affirm the trial court's judgment granting Custer's declaratory judgment request that it is not required to obtain City building permits, inspections and approvals, and pay related fees.
We reverse the trial court's judgment denying in part the County's declaratory judgment request that the City lacks the lawful authority to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees. We render judgment granting the County's declaratory judgment request that the City lacks the lawful authority to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees. We reverse the trial court's judgment denying in part the County's declaratory judgment request that the 1445 Agreement does not allow the City to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees. We render judgment granting the County's declaratory judgment request that the 1445 Agreement does not allow the City to require landowners developing property located in the City's ETJ to obtain City building permits, inspections and approvals, and pay related fees.
We reverse the trial court's judgment granting in part the City's request for a declaratory judgment that the City has the lawful authority to require landowners developing property located in the City's ETJ to obtain City building permits, inspections and approvals, and pay related fees. We render judgment denying the City's request for a declaratory judgment that the City has the lawful authority to require landowners developing property located in the City's ETJ to obtain City building permits, inspections and approvals, and pay related fees. We reverse the trial court's judgment granting in part the City's request for a declaratory judgment that the 1445 Agreement allows the City to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees. We render judgment denying the City's request for a declaratory judgment that the 1445 Agreement allows the City to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees.
We modify the trial court's judgment to delete the following sentences: "The Court finds that the City has the lawful authority to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees in those instances, but only in those instances, where the property at issue is subdivided and is therefore lawfully required to obtain plat approval from the City. In those instances where the property at issue is not subdivided and therefore lawfully required to obtain plat approval from the City, the City lacks the lawful authority to require landowners developing property located in the City's ETJ to obtain building permits, inspections and approvals, and pay related fees."
The trial court's judgment states: "The Court finds that the City-County 1445 Agreement is valid and enforceable, and that the County ceded all platting, inspection and building code authority in the ETJ to the City in 2002 as to all properties that are required to subdivide under State statute" and "The Court finds that the City-County 1445 Agreement is valid and enforceable, and that the County ceded all platting, inspection and building code authority *89 in the ETJ to the City in 2002 as to all properties that are required to subdivide." We modify these sentences in the judgment to state: "The Court finds that the City-County 1445 Agreement is valid and enforceable and that the County ceded all platting authority in the ETJ to the City in 2002."
We reverse the trial court's judgment ordering the City and County bear their own attorney's fees and taxable court costs as well as the trial court's judgment ordering Custer recover its attorney's fees and court costs. We remand the issue of attorney's fees and court costs to the trial court for its reconsideration in light of this opinion.

House Bill 1445 was adopted as section 242.001(c) of the Texas Local Government Code. Section 242.001(c) requires a city and county to enter into a written agreement that identifies the governmental entity authorized to regulate subdivision plats and approve related permits in a city's extraterritorial jurisdiction. See Tex. Loc. Gov't Code § 242.001(c).

A municipality's ETJ is the unincorporated area that is contiguous to and located within a certain distance of the municipality's corporate boundaries. See Tex. Loc. Gov't Code § 42.021(a).

These permits include a grading permit, stormwater permit, and fire-code permit.

For purposes of brevity, we refer to building permits, inspections and approvals, and related fees collectively as "building permits."