**Affirm; Opinion Filed January 19, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-19-00123-CV**
_____

**DIANA SIMPSON AND JOHN HARDING, Appellants**
**V.**
**OAKS ON MONTFORT CONDOMINIUM ASSOCIATION,**
**VERACITY INC., AND LORI WELSH, Appellees**

**On Appeal from the 95th District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-16-10283**

## MEMORANDUM OPINION

Before Justices Myers, Garcia,[1] and Pedersen, III
Opinion by Justice Pedersen, III

Appellants Diana Simpson and John Harding sought a declaratory judgment

that appellees, Oaks on Montfort Condominium Association, Veracity Inc., and Lori

Welsh, did not have the right to enter into their condominium unit to perform repairs

and did not have the right to charge them for security fees. Following a bench trial,

the trial court entered a final judgment in favor of appellees. In eight issues, Simpson

and Harding contend they had no duty to cooperate with repairs the Association was

---

[1] The Honorable Dennise Garcia succeeded the Honorable Bill Whitehill, a member of the original
panel. Justice Garcia has reviewed the briefs and the record before the Court.

performing, it was unnecessary for anyone to enter their condominium to effect such repairs, and appellees had no right to enter their condominium. Simpson and Harding complain that the Association was not authorized to charge them for the cost of having security present during completion of the repairs. Simpson and Harding also challenge several evidentiary rulings. We affirm.

## Background

The Oaks on Montfort Condominiums is a residential condominium community located in Dallas, Texas. The Oaks on Montfort Condominium Association (the Association), a Texas non-profit corporation, is a homeowners' association that administers the operation and management of the condominium community.[2] The Association contracted with Veracity, a professional management company, to manage day-to-day operations. Welsh, a Veracity employee, was the property manager assigned to the Association at all times relevant to this litigation.[3]

---

[2] Because the Association was created before January 1, 1994, it is governed primarily by the Condominium Act (the "Old Act"), codified at chapter 81 of the Texas Property Code. *See* TEX. PROP. CODE ANN. § 81.0011(a). However, the Association is also governed by the Uniform Condominium Act (the "Uniform Act"), codified at chapter 82 of that code, to the extent provided by section 82.002. *Id*. § 81.0011(b). Section 82.002 provides a list of specific provisions in the Uniform Act that apply to pre-1994 condominium regimes. Those listed provisions apply prospectively and they "do not invalidate existing provisions of the declaration, bylaws, or plats or plans of a condominium for which the declaration was recorded before January 1, 1994." *Id*. § 82.002(c); *see Holly Park Condominium Homeowners' Ass'n, Inc. v. Lowery*, 310 S.W.3d 144, 146 (Tex. App.—Dallas 2010, pet. denied).

[3] For purposes of this opinion, we refer to the Association, Veracity, and Welsh collectively as "the Association."

Simpson is the owner of a condominium, Unit 1205 (the Unit), at the Oaks on Montfort Condominiums. Harding lives in the Unit with Simpson but is not a record owner.

In June 2016, unit 1206, the condominium directly above Simpson's Unit, experienced a deflection in the floor around the fireplace hearth. The Association hired Classic Construction (Classic) to investigate the problem and perform any necessary repairs. Classic account executive Geary Free testified at trial that in order to determine the cause and extent of the problem, Classic employees pulled up the subflooring in unit 1206 and discovered wood rot on the top plate of a web truss between that unit and Simpson's Unit below. Classic determined it would be necessary to inspect the web truss from below in order to ascertain the extent of the wood rot damage.

Veracity asked Classic if it could perform the necessary investigation and repairs without entering Simpson's Unit. With respect to the inspection, Classic believed that it was imperative to inspect the truss from below to ensure that the building was structurally sound. Classic agreed that it might be possible to perform repairs from the outside of the building but cautioned that doing so would be significantly more expensive and it would be more difficult to guarantee the success of the repairs.

Veracity and Classic attempted to inspect the under-side of the truss and the vertical studs from Simpson's Unit. According to Free, Harding was so aggressive

and hostile, Classic could not complete the inspection. The Association then contacted Simpson in writing, requesting cooperation in coordinating a date and time for the inspection. The Association received no response so Veracity scheduled the inspection and hired Deputy Sheriff James Rodriguez, an off-duty officer with the Dallas County Sheriff's Department, to accompany Classic's work crew.

During the inspection, Harding was belligerent and hostile toward Welsh and Classic's workers. As a result, Classic's project manager informed Veracity that out of concern for the safety of his workers, Classic would not perform the necessary repairs without security present. Deputy Rodriguez agreed with Classic's assessment and recommended that the Association hire security.

Classic ultimately made the repairs from outside of the building. The Association contracted with off-duty Dallas police officers to be present during the repair work. The Association's decision as to the number of officers to hire was based upon the recommendation of Deputy Rodriguez. The Association then charged their expenses for security costs, management fees, and attorney's fees to Simpson's account.

Simpson and Harding filed suit against the Association seeking declaratory relief and asserting a cause of action for intentional infliction of emotional distress. They subsequently amended their petition to delete the intentional infliction of emotional distress cause of action, leaving only their request for declaratory judgment as to whether the Association had the right to enter the Unit to perform

repairs, and whether the Association had the right to charge fees for security to Simpson's account.

After a bench trial, the trial court entered judgment in favor of the Association. Upon request, the trial court issued findings of fact and conclusions of law. Simpson and Harding now appeal.

## Applicable Law

### A. Declaratory Judgment

The Uniform Declaratory Judgments Act ("DJA") generally permits a person who is interested under a deed or other contract, or whose rights, status, or other legal relations are affected by a statute or contract, to obtain a declaration of rights, status, or other legal relations thereunder. TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a). The purpose of the DJA is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and it is to be liberally construed and administered." *Id.* § 37.002(b); *see Garden Oaks Maint. Org. v. Chang*, 542 S.W.3d 117, 123 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We review declaratory judgments under the same standards as other judgments and decrees and look to the procedure used to resolve the issue at trial to determine the appropriate appellate standard of review. *See* CIV. PRAC. & REM. §37.010; *Solar Soccer Club v. Prince of Peace Lutheran Church of Carrollton*, 234 S.W.3d 814, 820 (Tex. App.—Dallas 2007, pet. denied).

## B. Standards of Review

In an appeal from a bench trial, the trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence by the same standards that are applied in reviewing the evidence supporting a jury's verdict. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Sheetz v. Slaughter*, 503 S.W.3d 495, 502 (Tex. App.—Dallas 2016, no pet.). When the appellate record contains a reporter's record, as it does in this case, findings of fact are not conclusive and are binding only if supported by the evidence. *Fulgham v. Fischer*, 349 S.W.3d 153, 157 (Tex. App.—Dallas 2011, no pet.).

When conducting a legal sufficiency review, we consider whether the evidence at trial would enable a reasonable and fair-minded factfinder to reach the challenged verdict. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *Guillory v. Dietrich*, 598 S.W.3d 284, 293 (Tex. App.—Dallas 2020, pet. denied). Evidence is legally insufficient to support a verdict when:

> (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*Gunn*, 554 S.W.3d at 658 (citing *Bustamante v. Ponte*, 529 S.W.3d 447, 455–56 (Tex. 2017)). More than a scintilla of evidence exists when reasonable and fair-minded jurors might reach different conclusions about the verdict based on the evidence admitted in the trial. *Id*. (citing *King Ranch, Inc. v. Chapman*, 118 S.W.3d

742, 751 (Tex. 2003). All the record evidence must be considered "in the light most favorable to the party in whose favor the verdict has been rendered," and "every reasonable inference deducible from the evidence is to be indulged in that party's favor." *Bustamante*, 529 S.W.3d at 456 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

When conducting a factual sufficiency review, we consider all the evidence supporting and contradicting the finding in a neutral light. *Fulgham*, 349 S.W.3d at 157 (citing *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989)). We set aside the finding for factual insufficiency only if the finding is so contrary to the evidence as to be clearly wrong and manifestly unjust. *Id.* (citing *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam)). In a bench trial, the trial court, as factfinder, is the sole judge of the credibility of the witnesses. *Id.* As long as the evidence falls within the zone of reasonable disagreement, we will not substitute our judgment for that of the factfinder. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). To reverse a verdict on grounds of factual insufficiency, the reviewing court must "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, shock the conscience, or clearly demonstrates bias." *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019).

We review the trial court's conclusions of law de novo. *BMC Software Belg., N.V.*, 83 S.W.3d at 794; *Sheetz*, 503 S.W.3d at 502. We are not bound by the trial

court's legal conclusions, but the conclusions of law will be upheld on appeal if the judgment can be sustained on any legal theory supported by the evidence. *Fulgham*, 349 S.W.3d at 157–58. Incorrect conclusions of law will not require reversal if the controlling findings of fact will support a correct legal theory. *Id*. at 158. Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Id*.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gharda USA, Inc. v. Control Sols., Inc*., 464 S.W.3d 338, 347 (Tex. 2015); *In re A.R.M*., 593 S.W.3d 358, 373 (Tex. App.—Dallas 2018, pet. denied). The trial court's evidentiary ruling will be upheld if there is any legitimate basis for the ruling. *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998); *In re Estate of Miller*, 243 S.W.3d 831, 837 (Tex. App.—Dallas 2008, no pet.). A trial court abuses its discretion when it acts "without reference to any guiding rules and principles." *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017) (quoting *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241–42 (Tex. 1985)). Even if an appellant establishes error, appellate courts reverse a judgment based on an erroneous evidentiary ruling only if the error probably resulted in an improper judgment. TEX. R. APP. P. 44.1(a)(1); *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004). "We review the entire record and require the complaining party to demonstrate that the judgment turns on the

particular evidence admitted." *Bay Area Healthcare Grp., Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007) (citing *Nissan Motor*, 145 S.W.3d at 144).

## Discussion

### A. Repairs to the Common Elements

Three of the issues asserted by Simpson and Harding are premised upon their assertion that the Association did not make repairs to common elements. In their first issue, Simpson and Harding contend that because the repairs to the upstairs unit were not common element repairs, it was unnecessary for the Association to enter their Unit. In their second issue, Simpson and Harding assert they had no duty to cooperate with repairs that were not common element repairs. In their seventh issue, they assert that the Association had no right to enter their Unit since there was no emergency or common element repair. In each of these issues, Simpson and Harding challenge the trial court's finding of fact number 4 which states: "It became necessary for the Association to enter Plaintiff Diana Simpson's Unit in order to repair the Common Elements."

The parties agree that the documents governing the duties and responsibilities of condominium owners and the Association include the By-Laws for The Oaks on Montfort Condominium Association (Bylaws), the Condominium Declaration for the Oaks on Montfort (Declarations), and the Rules and Regulations for Oaks on Montfort Condominium Association (Rules). The documents define "Common Elements," and describe maintenance responsibilities—what is to be maintained by

–9–

a unit's owner, and what is to be maintained by the Association. Both parties generally agree that the Association is responsible for the maintenance of the common elements. However, the parties disagree on what was repaired and whether it was a common element.

Simpson and Harding assert that the repairs to the upstairs unit consisted of repairs to a window, a door, the fireplace, and the balcony. They insist that the repairs did not involve repair to any common element. Harding testified that although he was not really sure what was done to repair the upstairs unit, it was his understanding that the repairs did not involve electrical, mechanical, or plumbing issues, and there was no emergency. Simpson and Harding assert that because the repairs were not related to any electrical, mechanical, or plumbing issue, or what the Declarations define as a common element, the Association's evidence was insufficient to prove that a common element repair necessitated entry into their Unit.

The Association contends that the evidence showed that significant repair work was done to the subflooring between the upstairs and downstairs units. Geary Free, Classic's project manager, testified that the work performed was largely related to the rotted wood beneath the subflooring. He also testified that the perimeter wall of the chimney was badly damaged. He explained that Classic had to rebuild and reinforce part of the truss that supports the second floor and the web truss supporting the balcony.

Victor Bosnich, the President of Veracity, testified that the Association is responsible for maintaining "common elements." He stated that according to the Bylaws, the Association is responsible for any repair to the subflooring. Article XI, Section 4(a) of the Bylaws provides:

> For purposes of maintenance, repair, alteration and remodeling, an Owner shall be deemed to own the interior nonsupporting walls, the materials (such as, but not limited to, plaster, gypsum dry wall, paneling, wallpaper, paint, wall and floor tile and flooring, **but not including the subflooring**) making up the finished surfaces of the perimeter walls, ceilings and floors within the unit . . .

(emphasis added). In addition to the subflooring, Bosnich testified that the Association is responsible for repairs to chimneys and flues, as set forth on the maintenance responsibility chart attached to the Bylaws. He opined that because unit owners are not obligated to maintain the subflooring and are not responsible for repairs to chimneys, the subflooring and chimneys are common elements. Thus, according to the testimony of Free and Bosnich, at least some portion of the repair work performed by Classic was repair to common elements.

The essence of Simpson and Harding's complaints, however, is that the Association had no right to enter their Unit. This is a challenge to the trial court's conclusion of law number 2, which states: "[t]he Association has the right to enter Plaintiffs' Unit as necessary to repair the Common Elements under Section 16 [of the Declarations]." Free explained why it was necessary to enter Simpson's Unit to conduct the inspection. He stated that it was imperative to inspect the truss from

below to ensure that the building was structurally sound. He also explained why it was preferable to repair the truss and subflooring from inside the Unit, rather than working from outside the building. Repairs from the exterior were significantly more expensive with less guarantee of success.

Bosnich testified that the Declarations give the Association the right to enter into a unit to repair common elements. Section 16 of the Declarations states in part:

> The Association shall have the irrevocable right, to be exercised by the Managing Agent or Board of Directors of the Association, to have access to each Unit from time to time during reasonable hours as may be necessary for the maintenance, repair or replacement of any of the Common Elements thereon or accessible from such Unit, or for making emergency repairs therein necessary to prevent damage to the Common Elements or to another Unit or Units.

The Association argues that based on this provision of the Declarations, it had the right to enter Simpson's Unit to inspect and to repair the subflooring and the underside of the truss and vertical studs between the upstairs and downstairs units because they are common elements accessible from that Unit.

Based on our analysis above, we conclude the evidence is legally and factually sufficient to support finding of fact number 4. Considering all the evidence in the light most favorable to the Association, there is more than a scintilla of evidence that at least some of the repairs were repairs to the common elements. In addition, there is more than a scintilla of evidence that the Association and Classic sought access to the Unit to inspect damage to the common elements between the upstairs and downstairs units. Also, the evidence established that the governing documents gave

the Association the right to access the Unit as necessary for the maintenance and repair of the common elements. We conclude the evidence is legally sufficient to support finding of fact number 4. *See Gunn*, 554 S.W.3d at 658. Further, considering all the evidence supporting and contradicting the finding, we conclude that the finding of fact number 4 is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Fulgham*, 349 S.W.3d at 157.

We also uphold the trial court's conclusion of law number 2 that the Association has the right to enter the Unit as necessary to repair the common elements as provided in section 16 of the Declarations. *See id.* at 157–58. Simpson and Harding's first, second, and seventh issues are overruled.

## C. Security Charges

Simpson and Harding's third, fourth and sixth issues pertain to charges assessed to Simpson's account for security officers to be on-site whenever Classic employees worked on unit 1206. In their third issue, Simpson and Harding urge that the Association was not authorized by its Rules, Bylaws, or Declarations to charge them for a police presence during the repairs. In their fourth issue, Simpson and Harding argue that Classic's refusal to work without security did not mean the Association could charge those costs to a unit holder. Simpson and Harding's sixth issue appears to repeat the arguments made in the third and fourth issues, again asserting that the governing documents do not authorize the Association to charge Simpson and Harding for security costs.

Simpson and Harding's issues challenge part of the trial court's finding of fact number 5, which states: "Plaintiff John Harding refused to cooperate with these repair attempts and threatened both the Association and its contractors." Simpson and Harding deny that Harding threatened the Association and its contractors. They completely ignore the testimony by the Association's witnesses describing Harding's threats and aggressiveness. And they assert there is no evidence to explain why the contractor would be nervous or fear for his safety or the safety of his crew. Simpson and Harding also challenge the court's conclusion of law number 4, which states: "[t]he Association's Rules and Regulations allow the Association to charge expenses necessitated by Plaintiffs' actions to Plaintiffs' account."

Lawrence Washner, President of the Board of the Association, testified that the Association hired security to be present during the repair work. He stated that the Association assessed the cost for such security against Simpson because Harding threatened workers, said he was going to get his gun, and threatened to punch Lori Welsh, the property manager, in the face. Washner testified that the Association had the authority to charge back security costs necessitated by the actions of a unit owner or occupant. When asked on cross-examination where the Association's documents discuss charges for a police presence, he explained that the documents authorize the Association to charge or seek reimbursement for any additional charges necessitated by the actions of a unit owner or occupant—the documents do not explicitly reference charges for a police presence.

–14–

Bosnich testified that Harding's actions caused the Association to incur additional security expenses, additional management fees, and additional legal fees. The Association also incurred additional construction costs because Classic employees had to return a second time, with Deputy Rodriguez, to complete their inspection of the underside of the subflooring from the Unit. Bosnich testified that all of these costs affect the interests of each Association member. He testified that the Rules authorize the Association to seek reimbursement from Simpson for those costs. On cross-examination, Bosnich was asked what document gave the Association authority to charge those costs to Simpson. He read the following provision into the record:[4]

> If an act or omission by a member of the Association is prejudiced to the interests of the membership and requires that the Association take any action or incur any expense in order to protect the interests of the membership, the association shall be reimbursed by the member for any expenses which it incurs, including reasonable attorneys' fees.

Bosnich opined that this provision authorized the Association to charge Simpson for all additional costs incurred by the Association because of Harding's actions.

Free testified that because of Harding's demeanor and aggressiveness, Classic was unwilling to leave its personnel in the Unit to conduct an inspection. He testified that even with security on site, the Classic foreman described on-going issues with

---

[4] This "Reimbursement" provision is set forth on page 14 of Defendant's Exhibit 3, a welcome to the community manual that provides a summary of various rules and regulations set forth in the Association's Bylaws and Declarations. This exhibit was admitted into evidence without objection.

Harding's volatility—Harding would start out amenable and then thirty minutes later, he would start cursing at the crew and security would have to intervene.

Deputy Rodriguez testified that after his interaction with Harding during the inspection of the Unit, he recommended that the Association hire three security officers for the safety of the contractors and crew during this construction project. When appellants' counsel questioned the need for three officers, Rodriguez explained that one officer was assigned to the front of the residence to monitor the front door, the garage entry, and the construction work vehicles parked on the street and two officers were assigned to the back of the residence where the contactors and crew were actually working. Rodriguez acknowledged that the property manager informed him that she had called the police and filed police reports about Harding on several occasions; however, Rodriguez did not investigate those prior reports. Rodriguez conceded that when he was at the property, he did not see Harding threaten anyone.

Based on our analysis above, we conclude the evidence is legally and factually sufficient to support finding of fact number 5. Considering all the evidence in the light most favorable to the Association, there is more than a scintilla of evidence that Harding threatened representatives of the Association and Classic on more than one occasion. The evidence also established that the Association charged the costs of providing security to Simpson's account. Further, the evidence established that the Association's documents allowed the Association to charge expenses necessitated

by Harding's actions to Simpson's account. We conclude the evidence is legally sufficient to support finding of fact number 5. *See Gunn*, 554 S.W.3d at 658. After considering all the evidence supporting and contradicting the finding, we also conclude that finding of fact number 5 is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *Fulgham*, 349 S.W.3d at 157.

We also uphold the trial court's conclusion of law number 4 that the Association's Rules allow the Association to charge expenses necessitated by Harding's actions to Simpson's account. *See id.* at 157–58. Appellants' third, fourth, and sixth issues are overruled.

## D.  Trial Testimony

In their fifth issue, Simpson and Harding complain that the testimony of Victor Bosnich and James Rodriguez should have been stricken as irrelevant or hearsay. At trial, counsel for Simpson and Harding made a general objection at the beginning of the Association's case, stating that he objected to all but one of the Association's witnesses because they had nothing to do with the four corners of the Association's Declarations, Bylaws, and Regulations. After ascertaining that the witnesses had been timely identified, the trial court overruled the general objection, stating that objections to a witness's testimony would have to be raised during that witness's testimony. Thus, Simpson and Harding were required to follow the usual process to preserve a complaint that the trial court erroneously admitted evidence.

*1. Bosnich's Testimony*

Simpson and Harding contend that Bosnich's testimony was "hearsay, non-relevant and the documents he testified to violate the best evidence rule." During the proceedings below, Bosnich testified that the Association's Bylaws include a maintenance exception for subflooring. Counsel for Simpson and Harding objected on the basis of relevance because Bosnich was not the on-site manager for Veracity. He also objected that Bosnich's response to a question about the Bylaws was "not the best evidence." The trial court overruled the objections and Bosnich testified that based upon the Bylaws, a unit owner was not responsible for maintaining the subflooring. This was the only objection to relevance made during Bosnich's testimony.

In their appellate brief, Simpson and Harding complain generally that Bosnich's testimony was not relevant—and that is all they say about relevance. They do not challenge the trial court's ruling on their single relevance-based objection. They do not refer to any specific testimony by Bosnich that they contend was irrelevant. And they provide no argument, with citation to the record and legal authority, to support their general contention that Bosnich's testimony was irrelevant. *See* TEX. R. APP. P. 38.1(i) (requiring clear, concise argument with citation to authorities and record). We conclude Simpson and Harding waived their relevancy complaint.

Simpson and Harding also face difficulties with their appellate argument that Bosnich's testimony regarding the various charges assessed to Simpson's account was a violation of the best evidence rule. They complain that instead of submitting and describing original documentation for the fines assessed to Simpson, Bosnich testified to, and presented as evidence, a letter that listed the fines. However, Simpson and Harding did not raise this objection to the trial court. To preserve error for appellate review, the complaining party must (1) make a timely objection to the trial court that "state[s] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context;" and (2) obtain a ruling. TEX. R. APP. P. 33.1(a); *see Thota v. Young*, 366 S.W.3d 678, 689 (Tex. 2012).

According to the record, the only best evidence rule objection made to the trial court occurred during Bosnich's testimony that the Bylaws included a maintenance exception for subflooring. Simpson and Harding did not object to the letter that was addressed to their counsel and itemized assessments to Simpson's account. In fact, their counsel offered the document into evidence during his cross-examination of Bosnich, and asked that it be admitted into evidence. After the letter was admitted without objection as plaintiffs' exhibit 4, Simpson and Harding's counsel questioned Bosnich about various items listed on the exhibit. Thus, Simpson and Harding failed

to make or preserve a best evidence objection to the letter. *See* TEX. R. APP. P. 33.1(a).

In their appellate brief, Simpson and Harding point to several statements made by Bosnich during his testimony that they now claim were hearsay. However, these objections were not made to the trial court and are not preserved for our review. TEX. R. APP. P. 33.1(a); *see McShane*, 239 S.W.3d at 235. Further, "[i]nadmissible hearsay admitted without objection may not be denied probative value merely because it is hearsay." TEX. R. EVID. 802.

### 2. *Rodriguez's Testimony*

Dallas County Sheriff's Deputy James Rodriguez testified that, after observing Harding's reaction during Classic's attempted inspection of the Unit, he recommended that the Association hire security to insure the safety of the construction crew making repairs to the upstairs unit. On appeal, Simpson and Harding complain that none of Deputy Rodriguez's testimony was relevant with respect to the issues that were tried.

To preserve error for appellate review, the complaining party must timely and specifically object to the evidence and obtain a ruling. TEX. R. APP. P. 33.1(a). Error is waived if the complaining party allows the evidence to be introduced without objection. *McShane*, 239 S.W.3d at 235. Here, Simpson and Harding did not object during Rodriguez's testimony. Instead, at the conclusion of his cross-examination of Rodriguez, Simpson and Harding's counsel asked the court to strike Rodriguez's

testimony because it had nothing to do with the case. The trial court did not err in allowing Rodriguez to testify—Simpson and Harding did not timely object to his testimony. *Id*. Further, a review of the entire record does not demonstrate that the judgment turns on the testimony of Rodriguez. *See Nissan Motor*, 145 S.W.3d at 144. Accordingly, error in the admission of Rodriguez's testimony, if any, was harmless. *McShane*, 239 S.W.3d at 234–35. We overrule Simpson and Harding's fifth issue.

### E. Attorney's Fees Affidavit

Simpson and Harding's eighth issue pertains to attorney's fees. In its final judgment, the trial court denied all declaratory relief sought by Simpson and Harding and awarded attorney's fees and costs to the Association pursuant to section 37.009 of the Texas Civil Practice and Remedies Code.[5] Simpson and Harding do not challenge the award of attorney's fees to the Association, nor do they argue that the trial court should have awarded attorney's fees to them. Instead, in their eighth issue, Simpson and Harding argue that the trial court erred in concluding that their attorney's fee affidavit was inadmissible. Thus, as framed, this issue seeks appellate

---

[5] In a declaratory judgment action, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." CIV. PRAC. & REM. § 37.009; *see Collin Cty. v. City of McKinney*, 553 S.W.3d 79, 87 (Tex. App.—Dallas 2018, no pet.). "The grant or denial of attorney's fees in a declaratory judgment action lies within the discretion of the trial court, and its judgment will not be reversed on appeal absent a clear showing of abuse of discretion." *Collin Cty*., 553 S.W.3d at 87 (citing *Hartsell v. Town of Talty*, 130 S.W.3d 325, 329 (Tex. App.—Dallas 2004, pet. denied)).

review of the court's decision on the admissibility of evidence and not on the court's decision to award attorney's fees to the Association.

During trial, the Association challenged the affidavit of attorney's fees incurred by Simpson and Harding as untimely. Counsel for Simpson and Harding conceded to the trial court that he had provided the Association with his attorney's fee affidavit on August 29, 2018, the day before trial.[6] Their counsel acknowledged that during discovery, the Association requested the production of documentary evidence of Simpson and Harding's attorney's fees. Their counsel admitted that Simpson and Harding objected to the Association's discovery requests and refused to produce evidence of their attorney's fees. Their counsel then attempted to persuade the court that the untimeliness of his affidavit was the Association's fault, arguing that the Association should have (1) objected to Simpson and Harding's discovery objection, (2) filed a motion to compel, or (3) scheduled a hearing on Simpson and Harding's objection. This argument failed to persuade the trial court. In conclusion of law number 8, the trial court concluded that the records relating to Simpson and Harding's attorney's fees were inadmissible because they were not produced timely.

Rule 193.6 of the Texas Rules of Civil Procedure states:

A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or

---

[6] In their brief, Simpson and Harding state that the record will be supplemented to add this filing. We do not find the affidavit in the record, and the record has not been supplemented to include it.

information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified, unless the court finds that:

> (1) there was good cause for the failure to timely make, amend, or supplement the discovery response; or

> (2) the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties.

TEX. R. CIV. P. 193.6(a). Simpson and Harding had the burden of establishing good cause or the lack of unfair surprise or unfair prejudice. *Id.* 193.6(b); *see In re A.R.M.*, 593 S.W.3d at 375. However, they offered no testimony that (1) there was good cause for their failure to timely produce evidence of their attorney's fees, or (2) that their failure to produce such evidence would not prejudice the Association. We conclude that the trial court did not abuse its discretion in concluding that the records relating to Simpson and Harding's attorney's fees were inadmissible because they were not produced timely.

Given our conclusion that the trial court did not abuse its discretion in concluding that Simpson and Harding's attorney's fee affidavit was inadmissible, we need not consider whether the affidavit was sufficient. We overrule Simpson and Harding's eighth issue.

## Conclusion

Having resolved all of Simpson and Harding's issues against them, we confirm the judgment of the trial court.

190123f.p05

_/Bill Pedersen, III//_
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

### JUDGMENT

DIANA SIMPSON AND JOHN HARDING, Appellants

No. 05-19-00123-CV     V.

OAKS ON MONFORT CONDOMINIUM ASSOCIATION, VERACITY INC., AND LORI WELSH, Appellees

On Appeal from the 95th District Court, Dallas County, Texas
Trial Court Cause No. DC-16-10283.
Opinion delivered by Justice Pedersen, III. Justices Myers and Garcia participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees OAKS ON MONFORT CONDOMINIUM ASSOCIATION, VERACITY INC., AND LORI WELSH recover their costs of this appeal from appellants DIANA SIMPSON AND JOHN HARDING.

Judgment entered this 19th day of January, 2021.